**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Robert H. WILLIS, Martin B. Sloate, Howard Kaye and Kenneth Stein, Defendants.**

**No. 91 Civ. 322 (WCC).**

United States District Court, S.D. New York.

Nov. 15, 1991.

---

Edwin H. Nordlinger, Deputy Regional Adm'r, S.E.C., Div. of Enforcement (Carmen J. Lawrence, Robert B. Blackburn,

Dorothy Heyl, Patricia T. Galvin, Roy D. Behren, Gregory J. Johnson, of counsel), and Shereff, Friedman Hoffman & Goodman (Andrew J. Levander, Joseph Giovanniello, of counsel), New York City, for plaintiff.

Hoffinger, Friedland, Dobrish, Bernfeld & Hasen (Jack Hoffinger, David Bernfeld, of counsel), New York City, for defendant Martin B. Sloate.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This matter is before the Court on the motion of defendant Martin B. Sloate ("Sloate") to dismiss the Complaint filed by the Securities and Exchange Commission (the "SEC") against Sloate and three other defendants, Robert H. Willis ("Willis"), Howard Kaye ("Kaye"), and Kenneth Stein ("Stein"), who are no longer parties to the suit.[1] The action was brought by the SEC under the authority of Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d), and seeks an injunction and other ancillary relief, including disgorgement of profits and civil penalties under the Insider Trading Sanctions Act of 1984 ("ITSA"), 15 U.S.C. § 78u–1(a)(1)(A), against Sloate, based on his alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Sloate moves the Court for dismissal of the Complaint pursuant to Fed.R.Civ.P. Rule 12(b)(6), for failure to state a claim upon which relief may be granted, and under Fed.R.Civ.P. Rule 9(b), for failure to allege fraud with particularity. As additional reasons for dismissal, Sloate contends that maintenance of this action against him violates due process and that the claims against him should be dismissed as untimely.

### Background

For purposes of the pending motion, the Court has assumed the facts alleged in the SEC's complaint to be true. The Complaint alleges that Willis, a psychiatrist, breached his fiduciary duty to a patient, Joan Weill, the wife of Sanford Weill, when he traded while in possession of certain of Mrs. Weill's patient confidences, consisting of material, nonpublic information about her husband's involvement in confidential corporate matters. Complaint at ¶¶ 15–17. In 1981, she confided in Willis information about the imminent merger of Shearson Loeb Rhoades ("Shearson"), of which her husband was Chief Executive Officer ("CEO"), and American Express Company (the "Shearson merger") (Complaint ¶¶ 18–21); and, in 1986, she related information about Weill's interest in, and efforts to take over, BankAmerica Corp. ("BankAmerica") (Complaint ¶¶ 40–42, 47).

Commencing on or about April 3, 1981, Willis communicated to Sloate material, nonpublic information about the Shearson merger which Willis had obtained in confidence from Mrs. Weill. Complaint at ¶ 25. From on or about April 9 through 14, 1981, Sloate, while in possession of the information, traded in Shearson securities for his own account and for at least two of his customer accounts. Complaint at ¶ 27–28. Commencing on or about January 14, 1986, Willis communicated to Sloate material, nonpublic information about Weill's BankAmerica plans which Willis had obtained in confidence from Mrs. Weill. Complaint at ¶ 52. From on or about January 22, 1986 through on or about February 11, 1986, while in possession of the information, Sloate traded in BankAmerica securities for his own account and on behalf of his customers. Complaint at ¶¶ 55, 57.

The Complaint further alleges that (1) Sloate tipped Stein, his customer and friend, confidential information about both the Shearson merger and Weill's BankAmerica plans (Complaint at ¶¶ 30, 63), and (2) he tipped Kaye, his friend and neighbor, about Weill's BankAmerica plans (Complaint at ¶ 60). Sloate allegedly com-

---

**1.** Simultaneously with the filing of the Complaint on January 14, 1991, defendants Willis, Kaye and Stein consented to the entry of final orders against them, which final orders were granted by this Court on January 17, 1991. The entry of these final orders left Martin B. Sloate as the sole remaining defendant.

municated to Stein and Willis that the information had been obtained from a friend who was a psychiatrist, and that the psychiatrist's source of that information was a Willis patient who was a Weill family member. Complaint at ¶¶ 30, 60, 63. Sloate is alleged to have earned profits and commissions on the purchases and sales of the Shearson and BankAmerica stock for himself and for his customers. Complaint at ¶¶ 32, 36, 38, 56, 58.

### Discussion

Failure to State a Claim

■ In considering a motion to dismiss the complaint under Fed.R.Civ.P. Rule 12(b)(6), the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to prevail on a motion to dismiss, the moving party must demonstrate "beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must accept as true the factual allegations accompanying the complaint and draw all reasonable inferences in favor of the nonmoving party. *See Cosmas v. Hassett*, 886 F.2d 8, 12 (2d Cir.1989).

■ Defendant first argues that the complaint fails to state a cognizable claim under Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder.[2] In order to withstand a motion to dismiss in an action charging a violation of Section 10(b) under the misappropriation theory, the Complaint must allege that (1) the defendant converted material, nonpublic information, (2) in breach of a fiduciary duty, (3) in connection with the purchase or sale of securities, and (4) the defendant acted with scienter. *United States v. Carpenter*, 791 F.2d 1024, 1028–29 (2d Cir.1986), *aff'd by an equally divided Court*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *United States v. Willis*, 737 F.Supp. 269, 272–73 (S.D.N.Y.1990); *SEC v. Musella*, 748 F.Supp. 1028, 1036 (S.D.N.Y.1989), *aff'd*, 898 F.2d 138 (2d Cir.), *cert. denied, DeAngelis v. SEC*, —— U.S. ——, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990). Where the defendant is a tippee, the Complaint must further allege that the tippee traded on the misappropriated information when he knew or should have known it was misappropriated. *Carpenter*, 791 F.2d at 1032; *Musella*, 748 F.Supp. at 1037.

### A. Scienter

■ The defendant contends that even assuming the misappropriation theory applies to Willis, the Complaint does not allege a factual basis from which to infer that Sloate knew or should have known that Willis's communications were the result of a breach of a fiduciary duty owed to Mrs. Weill. Defs.Mem. at 1. The Court cannot agree. The Complaint alleges that Willis communicated to Sloate material, nonpublic information about the Shearson merger and Weill's BankAmerica plans which Willis had obtained in confidence from Mrs. Weill. The Complaint also alleges that Willis told Sloate "that the source of the information was a patient under

---

**2.** Rule 10b–5 states:
   It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
      (a) To employ any device, scheme, or artifice to defraud,
      (b) To make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
      (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Willis's care who was a member of the Weill family" (Complaint at ¶¶ 25, 52), and that Sloate knew, or was reckless in not knowing, that the information had been misappropriated by Willis in breach of a duty to a patient (Complaint at ¶¶ 39, 59). The Complaint, as defendant points out, does not specifically state that Willis told Sloate that the information was given to him in confidence by Mrs. Weill or that Willis was breaching his ethical responsibilities to Mrs. Weill; however, it does allege facts from which such knowledge on defendant's part may be inferred.

### B. Materiality

■ The defendant next argues that the SEC's Complaint is deficient in that it fails to state how the alleged nonpublic information regarding Weill's BankAmerica plans was "material." Defs.Mem. at 30. The Complaint alleges that in January or February of 1986, Mr. Weill "was considering a proposal to change the management of BankAmerica, including becoming its Chief Executive Officer." Complaint at ¶ 40. It also alleges that Weill was engaged in confidential discussions concerning these plans and his steps to secure a commitment from Shearson to invest capital in BankAmerica if, among other things, Weill succeeded in becoming the CEO. Complaint at ¶¶ 40-41. In or about January of 1986, Weill apparently disclosed this information to Mrs. Weill. Complaint at ¶ 42. The Complaint further alleges that Mrs. Weill confided this information in Willis (Complaint at ¶ 47), and that Willis misappropriated this

information and tipped it to Sloate (Complaint at ¶¶ 52–54).

■ As the SEC points out in its Brief, materiality is a mixed question of law and fact, see TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976), which cannot be resolved on a motion to dismiss, unless the undisclosed facts are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985). In the instant case, the Court cannot conclude as a matter of law that the "reasonable investor" would not have considered the information regarding Weill's plans for acquisition of an interest in BankAmerica important in the context of the "total mix" of information available. See Basic, Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (adopting the materiality standard set forth in TSC for the determination of violations of Section 10(b) and Rule 10b–5).[3]

### C. Sloate's Other Arguments

Sloate also argues that the Complaint should be dismissed because the decisions of the Second Circuit under the misappropriation theory do not encompass the facts of this case. In support of this contention, Sloate suggests that each of the Circuit's prior misappropriation decisions concerned a breach of fiduciary duties by an "employee involved in the securities industry," and each involved fraud upon the issuer and/or investing public. Defs. Mem. at 28.[4]

---

**3.** Sloate argues that the slight price movement in BankAmerica shares between the day before and the day following BankAmerica's public announcement that Weill had approached it seeking to become its CEO, shows that the market considered the information regarding Weill's plans wholly immaterial. The Court is not convinced. While such trading history may aid in a determination of materiality, it is not dispositive on a motion to dismiss. There may be other factors, unbeknownst to the Court on this motion to dismiss, which affected the price of the BankAmerica shares on those days. Moreover, by focussing on these two days alone, defendant ignores the possibility that possession of this information at a time when it was allegedly known to Sloate would have assumed importance in the minds of investors.

**4.** Sloate also argues that the misappropriation theory may be applied only where the information is misappropriated by an insider of the corporation whose shares are being traded. Such a limitation on the misappropriation theory was expressly rejected in Carpenter. See Carpenter, 791 F.2d at 1029 (misappropriation theory proscribes the conversion by "'insiders' or others of material non-public information in connection with the purchase or sale of securities"); see also SEC v. Materia, 745 F.2d 197, 201 (2d Cir.1984), cert. denied, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985) (Section 10(b) was not "aimed solely at the eradication of fraudulent trading by corporate insiders"). Accordingly, the allegations in the Complaint must be considered sufficient in that they allege that

Sloate, however, is incorrect in suggesting that the Second Circuit requires either showing in a misappropriation case.

■ To support an action under Section 10(b) and Rule 10b–5 on the misappropriation theory, the government need only show that the information was obtained in breach of a duty to one with whom there exists a relationship of trust and confidence—there is no specific requirement that the duty be breached by one involved in the securities industry.[5] In fact, in *Carpenter*, the Second Circuit upheld a conviction under the misappropriation theory where an employee of the *Wall Street Journal* breached a duty of confidentiality to his employer by misappropriating from it confidential pre-publication information, regarding the timing and content of certain newspaper columns. Moreover, in *United States v. Willis*, Judge Cedarbaum upheld the criminal indictment against Dr. Willis, finding that the allegation of a breach of a fiduciary duty by a psychiatrist to his patient was sufficient to support the requirement of a breach of duty under the misappropriation theory. 737 F.Supp. at 274–75.[6]

■ Sloate also contends that the SEC's Complaint should be dismissed as insufficient to state a claim under Rule 10b–5 because the SEC has not alleged that Willis's misconduct defrauded the investing public or Mrs. Weill as an investor. Taking this argument one step further, defendant submits that the SEC has not alleged fraud "in connection with" a securities transaction, since the purported victim of the fraud was Mrs. Weill. Defs.Mem. at 21–

22, 27, 29. Again, however, the Second Circuit has rejected such a narrow reading of Section 10(b) and Rule 10b–5.

Rule 10b–5 is broadly worded to require only that the plaintiff show that the defendant acted in a manner which constituted "a fraud or deceit upon any person." It is sufficient, therefore, that the Complaint alleges that the fraud was committed upon Mrs. Weill in her capacity as a patient of Dr. Willis. *See United States v. Chestman*, 947 F.2d 551, 566 (2d Cir.1991) (in banc) ("Focusing on the language 'fraud or deceit upon *any* person' (emphasis added), we have held that the predicate act of fraud may be perpetrated on the source of the non public information, even though the source may be unaffiliated with the buyer or seller of securities.") (citing *Carpenter*, 791 F.2d at 1032).

Moreover, the requirement that the fraud be "in connection with the purchase or sale of securities" does not necessitate a finding that the one from whom the information was allegedly misappropriated, in this case Mrs. Weill, had traded in the securities in question. In *Carpenter*, the information was misappropriated from the *Wall Street Journal*, and it had no interest in the securities traded. 791 F.2d at 1032. This fact did not prevent the Second Circuit from concluding that the fraud was "in connection with the purchase or sale of securities." The court stated:

As to the "in connection with" standard, the use of the misappropriated information for the financial benefit of the defendants and to the financial detriment of

Willis, in breach of his duty of trust and confidence owed to Mrs. Weill, tipped material nonpublic information to Sloate, who then traded on that information.

**5.** The Second Circuit's decision in *United States v. Chestman*, 947 F.2d 551, 570 (2d Cir.1991) (in banc), does not affect our decision on this motion to dismiss. In that case, the court found that the evidence was insufficient to establish a fiduciary relationship or its functional equivalent between a husband and wife or the husband and his wife's family, so as to support a conviction of the husband's tippee under the misappropriation theory. In the instant case, the SEC has sufficiently alleged a breach of a fiduciary duty by a psychiatrist to his patient.

Whether the evidence will show that Mrs. Weill conveyed this information in the course of her treatment with the understanding that it was to stay confidential remains to be seen.

**6.** In so doing, the court noted that "[t]he underlying rationale of the misappropriation theory is that a person who receives secret business information from another because of an established relationship of trust and confidence between them has a duty to keep that information confidential. By breaching that duty and appropriating the confidential information for his own advantage, the fiduciary is defrauding the confider who was entitled to rely on the fiduciary's tacit representation of confidentiality." *Willis*, 737 F.Supp. at 274.

those investors with whom appellants traded supports the conclusion that appellants' fraud was 'in connection with' the purchase or sale of securities under section 10(b) and Rule 10b–5. We can deduce reasonably that those who purchased or sold securities without the misappropriated information would not have purchased or sold, at least at the transaction prices, had they had the benefit of that information.

*Id.*

For the purposes of this motion, then, and upon its reading of the controlling precedent, this Court concludes that the SEC has adequately alleged that the fraud in the instant case was "in connection with" a securities transaction.[7]

Failure to Plead Fraud with Particularity

Although the foregoing analysis indicates that plaintiff's allegation of securities fraud under Section 10(b) of the Securities Exchange Act survives defendant's Rule 12(b)(6) motion to dismiss, this does not exhaust our examination. Following the well established rule that a securities fraud claim under Section 10(b) falls within the umbra of Fed.R.Civ.P. Rule 9(b); *see Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986), defendant has also moved to dismiss under Rule 9(b) for failure to plead fraud with the requisite particularity.

▮▮▮▮ Fed.R.Civ.P. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Second Circuit has held that "the particularity requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The requirement of particularity is not to be assessed in a vacuum: it should be harmonized with the general command of Fed.R.Civ.P. Rule 8(a) that a complaint contain a "short and plain statement of the claim" and that each averment should be "simple, concise and direct." *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

▮▮▮▮ To be sufficient under Rule 9(b), a complaint must specify the fraudulent acts, the reasons the acts are alleged to be fraudulent, the times and places the acts occurred, and the identity of the defendants who acted fraudulently. *See Cosmas*, 886 F.2d at 11. In this action, Sloate argues that the Complaint fails to allege scienter with the requisite particularity under Rule 9(b).[8] As indicated above, "[a]lthough scienter need not be alleged with great specificity, ... there must be some factual basis for allegations of intent." *Quaknine v. MacFarlane*, 897 F.2d 75, 79–

---

**7.** The defendant also cites *Dirks v. SEC*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983), for the proposition that in order to withstand a motion to dismiss, the Complaint must have alleged that the tipper made an improper disclosure for the purpose of exploiting information for his personal gain. Defs.Mem. at 33. However, the misappropriation theory does not require a showing of a benefit to the tipper. *Dirks* is not to the contrary, as it did not involve the misappropriation theory. *See SEC v. Musella*, 748 F.Supp. 1028, 1038 n. 4 (S.D.N.Y.1989), *aff'd*, 898 F.2d 138 (2d Cir.), *cert. denied, DeAngelis v. SEC*, — U.S. —, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990). At any rate, the allegations concerning the longtime friendship of Willis and Sloate are sufficient from which to infer, for the purposes of this motion, that Willis derived a benefit from bestowing a gift upon his friend. *See Dirks*, 463 U.S. at 664, 103 S.Ct. at

3266 ("[t]he elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend.").

**8.** Sloate appears to have challenged under Rule 9(b) only the SEC's allegations with respect to scienter. In any event, the Court notes that the Complaint in the instant case specifically identifies the defendants and the times and places of the purchases of securities, and alleges that Sloate traded in those securities while in possession of material nonpublic information obtained through the violation of a duty. Such allegations satisfy the requirements of Rule 9(b) and provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

80 (2d Cir.1990). Such allegations are sufficient where the facts lie peculiarly within the opposing party's knowledge and are accompanied by information that raises "a strong inference" that the defendant acted with fraudulent intent. *Wexner v. First Manhattan, Co.*, 902 F.2d 169, 172 (2d Cir. 1990). The Court concludes that the SEC has complied with the requirements of Rule 9(b) and supplied a factual basis for believing that Sloate knew that Willis had improperly misappropriated material confidential nonpublic information and that Sloate knowingly traded on the basis of such misappropriated information.

The Complaint states that (1) Sloate and Willis were college roommates in the 1950's and maintained a close friendship subsequent to that time (Complaint at ¶ 9); (2) Sloate, a securities broker, managed several brokerage accounts for Willis and his family (Complaint at ¶ 9); (3) Willis communicated to Sloate material, nonpublic information about the Shearson merger which he had obtained in confidence from Mrs. Weill (Complaint at ¶ 25); (4) Willis communicated to Sloate material, nonpublic information about Weill's BankAmerica plans which Willis had obtained in confidence from Mrs. Weill (Complaint at ¶ 52); (5) with respect to both the information concerning Shearson and that concerning BankAmerica, Willis communicated to Sloate that the source of the information was one of Willis's patients who was a member of the Weill family (Complaint at ¶¶ 25, 52); (6) Sloate traded in Shearson and BankAmerica securities for himself and on behalf of his customers while in possession of this information (Complaint at ¶¶ 27–29, 57–59); (7) Sloate took profits for himself and for his customers from both the Shearson and the BankAmerica trades (Complaint at ¶¶ 32–39, 58); and (8) Sloate tipped the misappropriated information to former co-defendants, Stein and Kaye (Complaint at ¶¶ 29–30, 60–61, 63–65).

These allegations support a strong inference that Sloate knew that the information was misappropriated by Willis from his patient, Mrs. Weill, and that Sloate knowingly traded on the basis of that information. Considering the allegations respecting the close relationship of Willis and Sloate, the Court finds that there is a basis to infer that Sloate was aware of a psychiatrist's obligation to keep confidential his client's secrets. Moreover, the allegations with respect to the volume and timing of the trading activity in Shearson and BankAmerica securities by Sloate for himself and his customers, and the allegation respecting Sloate's tipping of the information provide circumstantial evidence that the defendant acted with scienter to commit fraud. Thus, the Complaint satisfies the requirements of Rule 9(b) and pleads scienter with the requisite specificity.

Due Process

Sloate argues that the SEC's prosecution of this case violates constitutional due process, since at the time of the events in question, the law of insider trading was too unclear to provide him with fair notice that his conduct was unlawful. Defs. Memorandum at 34. However, the Second Circuit has stated that "[a]ll the Due Process clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security, giving him no reason even to suspect that his conduct might be within its scope." *United States v. Herrera*, 584 F.2d 1137, 1149 (2d Cir.1978). "The fact that there is no litigated fact pattern precisely in point may constitute a tribute to the cupidity and ingenuity of the malefactors involved but hardly provides an escape from the penal sanctions of the securities fraud provisions here involved." *United States v. Brown*, 555 F.2d 336, 339–40 (2d Cir.1977) (rejecting a "fair notice" argument).

The Second Circuit has repeatedly rejected arguments seeking to invalidate actions brought under Section 10(b) and Rule 10b–5 on the ground that they give constitutionally inadequate notice of the proscribed conduct. *See United States v. Carpenter*, 791 F.2d 1024, 1034 (2d Cir.1986), *aff'd*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *United States v. Newman*, 664 F.2d 12, 19 (2d Cir.1981), *aff'd after remand*, 722 F.2d 729 (2d Cir.), *cert. denied*,

464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983); *United States v. Persky,* 520 F.2d 283, 287–88 (2d Cir.1975). The Complaint charges Sloate with having traded on material, nonpublic information provided him by Dr. Willis, which he was told was obtained from a member of the Weill family while under the care of Dr. Willis. Such conduct is sufficiently deceptive to convince the Court that Rule 10b–5's proscription of fraudulent and deceptive practices upon any person in connection with the purchase or sale of a security provided adequate notice to Sloate that the alleged conduct may be found to be unlawful. *Cf. Carpenter,* 791 F.2d at 1034; *Newman,* 664 F.2d at 19; *United States v. Willis,* 737 F.Supp. 269, 274 (S.D.N.Y.1990).

Statute of Limitations

*A. Civil Penalties*

■ Sloate is correct in his contention that the SEC's action for civil penalties under the Insider Trading Sanctions Act of 1984 is untimely with respect to the alleged unlawful trades executed in 1981. ITSA permits the Commission to seek a civil penalty for insider trading violations not to exceed three times the profit gained or loss avoided as a result of the unlawful purchase or sale. The sanction authorized by ITSA is not exclusive, but may be imposed in addition to other remedies accorded the SEC. Section 78u–1(d)(5) of the Act requires that an action to recover such a penalty must be commenced by the Commission within five years of the date of the offending purchase or sale. 15 U.S.C. § 78u–1(d). Consequently, the SEC's action for civil penalties under ITSA is timely with respect to Sloate's purchases and sales of BankAmerica securities, beginning on or after January 22, 1986, since those trades fall within five years of the filing of the Complaint in this action. With respect to the Shearson trades in 1981, however, the SEC is time-barred from seeking civil penalties under ITSA.

*B. Injunctive Relief*

■ Sloate's argument that the SEC's action requesting equitable relief is untimely is not well founded. The SEC, in an civil action for injunctive relief based upon violations of the insider trading laws, is not bound by any specifically delineated statute of limitations. The effect of the absence of a limitations period is moderated in part by the court's consideration of the remoteness of the defendant's past violations in deciding whether to grant the requested relief. *See generally* A. Jacobs, 5C *Litigation and Practice Under Rule 10b–5* § 235.01, at 10–5 (2nd rev. ed. 1991). "If the remoteness in time is substantial and there have been no intervening violations, it is highly improbable that a court, in the exercise of its discretion, would grant injunctive relief." *SEC v. Glick* [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,535, at 97,794, 1980 WL 1414 (D.Nev.1980). In the instant case, the Court cannot say that the alleged violations, dating back to 1981, are so remote that they are not to be considered in determining whether a grant of injunctive relief is appropriate. Thus, the Court concludes that the SEC's request for an injunction, and other ancillary relief, against Sloate cannot be dismissed as time-barred.

Laches

■ The defense of laches is an equitable doctrine, concerned principally with the fairness of permitting a claim to be enforced. *See Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). To succeed on a claim of laches, the Court must find both that the plaintiff delayed unreasonably and inexcusably in commencing the action and that defendant suffered prejudice as a result. *See Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 655 (2d Cir. 1978).

■ Sloate asserts that it would be inequitable to permit the SEC to maintain this action against him since the Commission unreasonably delayed in bringing suit. The Court cannot agree. As the defendant notes, the SEC did not learn of the facts underlying its cause of action until October of 1988. It then investigated those facts for two years. In a case as complex as this one, involving numerous parties and trades,

such an investigative period cannot be deemed unreasonable.[9]

Even if there had been some unreasonable delay on the part of the SEC, or prejudice to Sloate as a result, the defense of laches is generally unavailable when the government is a party. *See Badaracco v. Commissioner*, 464 U.S. 386, 399 n. 10, 104 S.Ct. 756, 765 n. 10, 78 L.Ed.2d 549 (1984) ("laches [is] a defense to which the Government usually is not subject"); *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940) ("It is well settled that the United States is not ... subject to the defense of laches in enforcing its rights"). While some courts have noted that laches may be applied against the government where it is seeking to vindicate purely private rights, *see SEC v. Penn Central Co.*, 425 F.Supp. 593, 599 (E.D.Pa.1976), that defense has been held inapplicable where the government agency is acting in the public interest. *See, e.g., SEC v. Sanders* [1986–87 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,042, at 95,197, 1986 WL 15546 (D.Colo.1986); *SEC v. Condron* [1984–85 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 92,095, at 91,483, 1985 WL 2054 (D.Conn.1985); *SEC v. Gulf & Western Indus., Inc.*, 502 F.Supp. 343, 348 (D.D.C.1980).

In the present suit, the SEC is acting in the public interest by "attempting to enforce effectively the federal securities laws under its statutory mandate." *SEC v. Penn Central Co.*, 425 F.Supp. at 599. Any judgment potentially entered would serve the public's interest in assuring compliance with those laws. The authority relied on by Sloate is inapposite to the question of whether laches applies in the present situation. The Court, therefore, concludes that the equitable defense of laches is not available to Sloate in this action.

## Conclusion

For the foregoing reasons, the motion to dismiss for failure to state a claim or for failure to plead fraud with particularity is denied. However, the claim for money damages under the Insider Trading Sanctions Act with respect to the Shearson trades in 1981 is time-barred.

SO ORDERED.

---

**9.** Moreover, the Commission argues that any delay in the investigation was due to circumstances beyond its control, namely: (1) "Willis, the source of Sloate's information, did not begin to cooperate with the United States Attorney's Office or the Commission until late June of 1990;" (2) Sloate refused to testify in the investigation; and (3) the investigation was more complicated than indicated in the Complaint. Plts. Surreply Memorandum at 16–17.