**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Robert H. WILLIS, Martin B. Sloate, Howard Kaye and Kenneth Stein, Defendants.**

**No. 91 Civ. 322 (WCC).**

United States District Court, S.D. New York.

May 8, 1992.

rence, Ann C. Myers, Dorothy Heyl, Gregory J. Johnson, of counsel), for plaintiff.

Hoffinger Friedland Dobrish Bernfeld & Stern, P.C. by Jack S. Hoffinger, Shereff, Friedman, Hoffman & Goodman by Andrew J. Levander, New York City (David B. Bernfeld, of counsel), for defendant Martin B. Sloate.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action was brought by the Securities and Exchange Commission (the "SEC") under the authority of Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d), and seeks an injunction and other ancillary relief, including disgorgement of profits and civil penalties under the Insider Trading Sanctions Act of 1984 ("ITSA"), 15 U.S.C. § 78u–1, against Sloate, based on his alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. On November 15, 1991, this Court denied Sloate's motion to dismiss the Complaint for failure to state a claim upon which relief may be granted and for failure to allege fraud with particularity. 777 F.Supp. 1165 Sloate filed a motion to reconsider, and in an Opinion and Order dated March 19, 1992, 787 F.Supp. 58 the Court reaffirmed the November decision in its entirety.[1] Presently before the Court is the SEC's motion, pursuant to Rule 37(a), Fed.R.Civ.P., to compel Sloate to testify at a deposition and produce documents.

## BACKGROUND

At his deposition on February 27, 1991, Sloate invoked his Fifth Amendment privilege against self-incrimination and refused to answer all questions posed by the SEC, except for giving his name.[2] On December 6, 1991, this Court entered an Order pursuant to 18 U.S.C. §§ 6002 and 6003 directing Sloate to:

give testimony and provide information which he refuses to give on the basis of

Richard H. Walker, Regional Adm'r by Robert B. Blackburn, S.E.C., New York City (Edwin H. Nordlinger, Carmen J. Law-

---

1. The Court assumes familiarity with its earlier decisions.

2. Sloate also relied on the parallel New York privilege.

his privilege against self-incrimination as to all questions concerning Sloate's securities transactions between January 1, 1980 and January 1, 1988; any communications between Sloate and persons with whom he or his firm Sloate, Weisman, Murray, Co. ("Sloate Weisman"), conducted any securities business or any person with whom Sloate discussed any security or public company; the history, nature or any aspect of Sloate's securities trading; and the history, nature, or any aspect of Sloate's relationship with customers or entities which had accounts at Sloate Weisman, including, but not limited to, Robert H. Willis, Kenneth Stein and Howard Kaye.

In accordance with 18 U.S.C. §§ 6002 and 6003, the Order further provides that:

> no testimony or other information compelled under this Order, or any information directly or indirectly derived from such testimony or other information, may be used against MARTIN B. SLOATE in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this order.

Still claiming a Fifth Amendment right, notwithstanding the issuance of the Order compelling his testimony and immunizing that testimony from criminal use, Sloate continues to refuse to respond to deposition questions or to provide documents. Sloate contends that despite the grant of use immunity, "he remains exposed to the risk that his testimony will be used against him (a) in actions ostensibly civil in form which nonetheless seek to impose punitive sanctions (in this as well as in future administrative proceedings) and (b) to prosecute him formally for crimes excluded from the immunity grant." Sloate Opposition Memo. at 2.

## DISCUSSION

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. Sloate argues that the immunity granted him is insufficient to protect his Fifth Amendment right if he is compelled to testify while there exists a real threat that the government may in the future try to use his immunized testimony against him in proceedings in which he contends he may be subject to sanctions criminal in nature. The Court cannot agree.

The Supreme Court has noted that immunity statutes are "part of our constitutional fabric." *Kastigar v. United States*, 406 U.S. 441, 447, 92 S.Ct. 1653, 1658, 32 L.Ed.2d 212 (1972) (quoting *Ullmann v. United States*, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956)). These statutes seek to strike a balance between the constitutional privilege against compulsory self-incrimination and the government's power to enforce the laws effectively by compelling citizens to testify. *Id.* As set forth in 18 U.S.C. § 6002,[3] persons ordered to provide testimony "may not refuse to comply with the order on the basis of [the] privilege against self-incrimination."

▪ Consistent with 18 U.S.C. § 6002, the December 6, 1991 Compulsion Order provides that "no testimony or other information compelled under this Order, or any information directly or indirectly derived from such testimony or other information, may be used against MARTIN B. SLOATE in any criminal case...." Statutory use immunity, such as that which protects any

---

**3.** 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

testimony compelled from Sloate, cannot be challenged successfully on the grounds that it provides less protection than the Fifth Amendment. In *Kastigar*, the Supreme Court held that Section 6002 immunity is coextensive with the privilege against self-incrimination and suffices to supplant it. 406 U.S. at 462, 92 S.Ct. at 1665. Such immunity leaves the witness in substantially the same position as if he had claimed the privilege in the absence of a grant of immunity. *Id.* Accord *United States v. Bell*, 902 F.2d 563, 565 (7th Cir. 1990); *In re Grand Jury Proceedings*, 860 F.2d 11, 14 (2d Cir.1988).

█ Defendant in the instant action has not been left to speculate as to the scope or effectiveness of his grant of immunity. His testimony cannot be used in "any criminal case," as that term is used in the Constitution and in extensive case law.[4] Moreover, once a witness has testified under a grant of immunity, the government bears the burden of proving that the evidence it proposes to use in a subsequent criminal proceeding was derived from a wholly independent source, untainted by the immunized testimony. *United States v. Schwimmer*, 882 F.2d 22, 25 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990).

As the Supreme Court has noted:

[T]he immunity granted need only remove those sanctions which generate the fear justifying invocation of the privilege: 'The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the Amendment ceases to apply.'

*Ullmann v. United States*, 350 U.S. 422, 431, 76 S.Ct. 497, 502-03, 100 L.Ed. 511 (1956) (quoting *Hale v. Henkel*, 201 U.S. 43,

26 S.Ct. 370, 50 L.Ed. 652 (1906)). Accordingly, since Sloate's immunized testimony cannot be used to "incriminate" him, he is protected to the extent of his Fifth Amendment privilege. *See In re Daley*, 549 F.2d 469, 478 (7th Cir.), *cert. denied, Daley v. Attorney Registration & Disciplinary Comm'n of Supreme Court of Illinois*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977).

█ Such a determination, however, does not end our inquiry. Although the grant of statutory immunity protects a witness who is compelled to answer to the extent of his constitutional privilege against self-incrimination, when a particular sanction is sought to be imposed against him, he has the right to claim that it is criminal in nature. *See Ullmann*, 350 U.S. at 431, 76 S.Ct. at 502. In this regard, Sloate argues that he cannot be compelled to testify since any immunized testimony could be used against him in subsequent proceedings, which although labelled "civil" or administrative are, in fact, criminal. Specifically, he suggests that his immunized testimony might be used against him (1) in future administrative proceedings to impose monetary sanctions or to revoke or suspend his registration and trading privilege; (2) in the instant action in support of ITSA penalties of up to "three times the profits gained or loss avoided;" and (3) in future perjury prosecutions.

Sloate's argument is premature. As the Supreme Court made clear in *Ullmann*, the time for such an argument is if and when subsequent cases are brought and there is an issue as to whether the immunized testimony can be admitted into evidence. The petitioner in *Ullmann* had refused to answer a grand jury's questions relating to the Communist Party. Attacking the immunity granted him as constitutionally inadequate, the petitioner argued that his testimony would expose him to

---

4. Sloate cites several cases for the proposition that the risk of both punishment as well as prosecution must be eliminated with certainty before a witness can be compelled to give incriminating testimony. These cases have no application here. Sloate is not in the position of those reluctant witnesses in *Pillsbury Co. v. Con-* *boy*, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983); *Stevens v. Marks*, 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966), and *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), who were ordered to testify without the benefit of statutory immunity.

oppressive disabilities such as "loss of job, expulsion from labor unions, state registration and investigation statutes, passport eligibility, and general public opprobrium." 350 U.S. at 430, 76 S.Ct. at 502. The Court rejected petitioner's argument, noting that petitioner is free to object to the introduction of his immunized testimony and claim that the sanction is criminal "when a particular sanction is sought to be imposed against him." 350 U.S. at 431, 76 S.Ct. at 503. Sloate is in the position of the petitioner in *Ullmann*—no administrative proceedings or perjury prosecutions having been instituted against him, it is premature for him now to challenge the use of his immunized testimony in such proceedings.

Similarly, consideration of the issue of whether the civil sanctions authorized by ITSA are criminal is unwarranted at this juncture.[5] Sloate concedes that the instant action is not criminal on its face—he argues only that the potential sanctions are punitive. Sloate Opposition Memo. at 12 n. 11. The amount of ITSA sanctions to be awarded in a given case, however, is left to the Court's discretion. Thus, only in the event the Court finds that Sloate has violated the law will it be necessary to determine whether the imposition of a fine pursuant to ITSA is appropriate, and whether, in its proposed application to Sloate, such a fine would be tantamount to the imposition of a criminal penalty.[6]

While it is true that in its Complaint against Sloate the SEC seeks relief pursuant to ITSA, at the present time, the SEC has not even received Sloate's immunized testimony, much less attempted to use it against him in support of the imposition of ITSA sanctions. Accordingly, if in the future an attempt is made to use Sloate's testimony against him in a way he feels violates the statutory grant of immunity, then Sloate may assert his Fifth Amendment privilege at that time. *See In re Doyle*, 839 F.2d 865 (1st Cir.1988). *See also In re Subpoena of Heimerle*, 788 F.Supp. 700 (E.D.N.Y.1992) (possibility of improper use of witness's immunized testimony in a subsequent probation revocation hearing did not permit witness to invoke the privilege in order to avoid giving immunized testimony at trial); *In re Grand Jury Proceedings*, 835 F.2d 375, 376 (1st Cir.1987) (time for witness to raise, and Court to decide, Fifth Amendment claim is if and when immunized testimony is sought to be used against the witness).

## CONCLUSION

For the foregoing reasons, the SEC's motion to compel deposition testimony and the production of documents is granted, and Sloate is directed to comply with the Order of December 6, 1991.

---

**5.** Sloate contends that the Court must decide now whether ITSA sanctions are criminal despite their "civil" label, since if he is compelled to testify prior to such a ruling, "once disclosure occurs, it is too late to put the 'cat' back into the 'bag.'" Sloate Sur–Reply Memo. at 6. However, the case on which Sloate relies for his assertion, *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), involved a witness who was ordered to produce testimony *without* a grant of statutory immunity. Indeed, the Court specifically stated: "It is important here that the witness was not granted immunity from prosecution on the basis of any magazines he might produce ... Had the witness been granted formal immunity a different case would be presented; in that event a witness may be compelled to testify." 419 U.S. at 462 n. 10, 95 S.Ct. at 593 n. 10. In the instant case, Sloate has been immunized consistent with the Fifth Amendment from the use of his testimony against him in any criminal action. Thus, disclosure at this time can in no way prejudice Sloate.

**6.** ITSA provides that "[t]he amount of the penalty which may be imposed on the person who committed such violation shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication." 15 U.S.C. § 78u–1(a)(2).