## SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,

v.

## Maurice RIND, Defendant–Appellant.

### No. 91–55972.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided April 19, 1993.

---

Edward Gartenberg, Burris, Drulias & Gartenberg, Los Angeles, CA, for defendant-appellant.

Jacob H. Stillman, Associate Gen. Counsel, Washington, DC, for plaintiff-appellee.

Before: WALLACE, Chief Judge,
TROTT and T.G. NELSON, Circuit Judges.

WALLACE, Chief Judge:

This interlocutory appeal raises an important issue of first impression: what, if any, statute of limitations applies to a civil enforcement action brought by the Securities and Exchange Commission (Commission). We must also decide whether the right to a jury trial guaranteed by the Seventh Amendment attaches where the Commission sues for disgorgement of illegal profits. The district court held that the Commission was not bound by a statute of limitations and that Rind did not have a right to a jury trial. The district court had jurisdiction pursuant to 15 U.S.C. §§ 77v(a), 78u(e), and 78aa. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1292(b). We affirm.

**I**

On August 15, 1990, the Commission filed a civil enforcement action against Rind and 13 other defendants pursuant to section 20(b) of the Securities Act of 1933 (1933 Act), 15 U.S.C. § 77t(b), and section 21(d) of the Securities and Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78u(d). The complaint alleged that Rind and his co-defendants had engaged in securities fraud and had violated various reporting and recordkeeping provisions of the federal securities laws in connection with the well-publicized collapse of ZZZZ Best Company (Z Best). Rind is the only defendant left in this case; 12 consented to judgments against them, and the other defaulted.

In its first amended complaint, the Commission alleges that Rind concocted a fraudulent transaction which allowed Z Best to overstate its assets vastly, thereby enabling the company to raise millions of dollars in capital. The Commission asserts that Rind received at least $700,000 for his efforts. The alleged overstatement of Z Best's assets was contained in the company's registration statements, in violation of section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule (Rule) 10b–5, 17 C.F.R. § 240.10b–5 (1992). Rind was also charged with aiding and abetting various reporting and recordkeeping violations by the company, in violation of sections 13(a) and (b)(2) of the 1934 Act, 15 U.S.C. §§ 78m(a) and (b)(2), and Rules 12b–20, 13a–13, and 13b2–1, 17 C.F.R. §§ 240.12b–20, 240.13a–13, and 240.13b2–1 (1992). The Commission seeks a permanent injunction prohibiting Rind from violating these provisions in the future and requiring disgorgement of any unlawful gains.

The district court granted the Commission's motion to strike Rind's jury demand on the ground that disgorgement is an equitable remedy. The court also granted the Commission's motion to strike Rind's statute of limitations defenses and denied his motion for judgment on the pleadings based on the statute of limitations. The district court certified the statute of limitations and jury trial questions for interlocutory appeal, and we granted Rind permission to appeal.

**II**

Congress provided the Commission with express statutory authority to administer and enforce the 1933 and 1934 Acts. *See* § 20 of the 1933 Act, 15 U.S.C. § 77t; § 21 of the 1934 Act, 15 U.S.C. § 78u. It did not, however, explicitly subject the Commission to a statute of limitations. Our task is to interpret what Congress meant by this silence.

Relying on the Supreme Court's recent decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (*Lampf*), Rind argues that Congress intended a one-year statute of limitations with a three-year period of repose to govern civil enforcement actions brought by the Commission. He asserts that the latest that the Commission should have been put on notice of a potential fraud by Rind would have been in July 1987, when Z Best filed for bankruptcy. Because this was

over three years before the Commission filed its initial complaint, Rind argues that the Commission's action against him is time barred.

Without disputing the chronology offered by Rind, the Commission responds that it is not subject to any limitations period. We review de novo the district court's ruling on the appropriate statute of limitations. *Felton v. Unisource Corp.*, 940 F.2d 503, 508 (9th Cir.1991).

### A.

■ *Lampf* involved a dispute between a group of disgruntled investors in tax-shelter partnerships and a law firm that had helped organize the partnerships and prepared opinion letters addressing the tax consequences of investing in the partnerships. —— U.S. at ——, 111 S.Ct. at 2776. The investors charged the law firm with misrepresenting the value of the partnerships and brought suit under section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder. *Id.* at ——, 111 S.Ct. at 2776–77.

The text of section 10(b) does not provide for private rights of action. Such "implied" claims owe their genesis to the courts and not Congress. The Court thus was "faced with the awkward task of discerning the limitations period that Congress intended courts to apply to a cause of action it really never knew existed." *Id.* at ——, 111 S.Ct. at 2780.

In order to determine what statute of limitations Congress would have adopted had only it thought to create a private right of action under section 10(b), the Court turned to the securities laws themselves. It concluded that "where, as here, the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period." *Id.* A court should borrow a state limitations provision only where the statute of origin does not yield an analogous federal rule. *Id.*

Congress imposed an explicit statute of limitations for each of the private claims created by the 1933 and 1934 Acts. With one exception, each of these provides for a one-year time period after discovery of the alleged securities violation combined with a three-year period of repose. *See* § 13 of the 1933 Act, 15 U.S.C. § 77m; §§ 9(e) and 18(c) of the 1934 Act, 15 U.S.C. §§ 78i(e) and 78r(c). The single exception is section 16(b) of the 1934 Act, 15 U.S.C. § 78p(b), which only provides for a two-year period of repose. Along with these claims, section 10(b) formed part of a "complex web of regulations." *Lampf,* —— U.S. at ——, 111 S.Ct. at 2781. Together, these provisions promote the "central goal" of the securities laws: to protect investors from stock manipulations and to impose regular reporting requirements on publicly-traded securities. *Id.* Against this statutory backdrop, the Court reasoned that the 1– and 3–year structure best reflected how Congress would have balanced the policy considerations at play in litigation under section 10(b). *See id.* at —— – ——, 111 S.Ct. at 2780–81.

The Court thus concluded that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* at ——, 111 S.Ct. at 2782. Because the investors in *Lampf* had filed suit more than three years after the alleged misrepresentations, the Court declared that their claims were untimely. *See id.*

Although acknowledging that *Lampf* itself only involved private litigants, Rind asserts that when the Commission sues for disgorgement it is seeking money damages in the same manner as any private plaintiff. He therefore contends that the Commission should be bound by the same statute of limitations: one year with a three-year period of repose.

The plain language of *Lampf* suggests otherwise. At the outset of its opinion, the Court stressed that the only issue before it was "which statute of limitations is applicable to a *private* suit brought pursuant to" section 10(b) and Rule 10b–5. *Id.* at ——, 111 S.Ct. at 2776 (emphasis added). The opinion derived a statute of limitations for

private rights of action under section 10(b) from the other private rights of action contained in the securities laws. At no point did the Court discuss civil enforcement actions brought by the Commission. More importantly, there is no "awkwardness" here: the Commission's enforcement powers are a product of congressional design and not judicial imagination. Unlike a private litigant, the Commission does not sue under section 10(b). Rather, the Commission has express authority to enforce section 10(b) and the other provisions of the 1934 Act pursuant to section 21 of that Act. *See* 15 U.S.C. § 78u. There is no reason to assume that an opinion discussing private claims under section 10(b) covers public enforcement suits brought under an entirely different section of the 1934 Act.

Nor does the reasoning of *Lampf* support Rind's argument. In *Lampf,* the Court determined that the choices Congress made in limiting the express private actions in the securities laws provided a close approximation of how Congress would have balanced the policy considerations implicit in selecting a statute of limitations for private litigation under section 10(b). *See* —— U.S. at ——–——, 111 S.Ct. at 2780–81. These private limitations periods, however, do not adequately reflect the different interests at stake where the Commission seeks to enforce the securities laws. Although private claims play an undeniably important role in the enforcement of the securities laws, they are brought for entirely private ends. Private damages actions focus narrowly on how much the individual lost as a result of the illegal conduct and whether that injury can be reasonably quantified.

In contrast, the Commission sues as part of its statutory mandate to enforce the federal securities laws. As such, civil enforcement actions promote economic and social policies independent of the claims of individual investors. The fact that disgorgement involves money does not change the nature of the remedy. The Commission seeks disgorgement in order to deprive the wrongdoer of his or her unlawful profits and thereby eliminate the incentive for violating the securities laws. The theory behind the remedy is deterrence and not compensation. *See SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1104 (2d Cir. 1972) (*Manor Nursing*); *SEC v. Penn Cent. Co.,* 425 F.Supp. 593, 599 (E.D.Pa. 1976). Indeed, a district court may grant the Commission's request for disgorgement even where no injured investors can be identified. *See SEC v. Blavin,* 760 F.2d 706, 713 (6th Cir.1985). In light of the important public function served by Commission enforcement activity, we therefore cannot conclude, as did the Court in *Lampf,* that the express time limits for private claims "accommodate a balance of interests very similar to that at stake here." —— U.S. at ——, 111 S.Ct. at 2780 (internal quotation omitted).

### B.

■ Having determined that *Lampf* does not control the disposition of this case, we must ask whether any limitations period governs Commission enforcement actions. Our analysis begins with the structure of the securities laws themselves. In the 1933 and 1934 Acts, Congress developed a comprehensive plan to regulate the securities markets. As part of that plan, Congress created a number of private claims, each bound by an express statute of limitations. At the same time, and in the same acts, Congress granted the Commission broad power to enforce the substantive provisions of the securities laws but refrained from imposing an explicit time limit on Commission enforcement actions. Congress clearly devoted its time and attention to limitations issues. The fact that it did not enact an express statute of limitations for lawsuits instituted by the Commission, therefore, must be interpreted as deliberate.

Canons of statutory interpretation bolster the conclusion implicit from the structure of the 1933 and 1934 Acts. Congress often fails to supply an express statute of limitations when it creates federal claims. In these circumstances, the Supreme Court generally has inferred that Congress intended by its silence that the courts should "borrow" the most analogous state limita-

tions period. *See Reed v. United Transp. Union*, 488 U.S. 319, 323–24, 109 S.Ct. 621, 624–25, 102 L.Ed.2d 665 (1989). This rule, however, does not apply without exception. *Id.* at 324, 109 S.Ct. at 625.

■ State limitations periods do not bind the United States when it sues to vindicate a public right or interest, absent a clear showing of congressional intent to the contrary. *See United States v. Summerlin*, 310 U.S. 414, 416–17, 60 S.Ct. 1019, 1020–21, 84 L.Ed. 1283 (1940); *Dole v. Local 427, Int'l Union of Elec. Workers*, 894 F.2d 607, 610 (3d Cir.1990) (*Local 427*). This doctrine, which has its origins in the ancient principle that time does not run against the king, finds its modern justification in the policy that public rights, revenues, and property should not be forfeited due to the negligence of public officials. *See Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938). Applying this rule, this and other circuits have concluded that various types of actions by government officials are not subject to state, or indeed any other, limitations periods. *See Local 427*, 894 F.2d at 610–16 (no statute of limitations applies when Secretary of Labor sues under Labor–Management Reporting and Disclosure Act (LMRDA) to enjoin local union from refusing to allow one of its members to review collective bargaining agreements); *Donovan v. West Coast Detective Agency, Inc.*, 748 F.2d 1341, 1343 (9th Cir.1984) (no statute of limitations applies when Secretary of Labor sues under LMRDA to compel filing of requisite reports); *Donovan v. Square D Co.*, 709 F.2d 335, 341 (5th Cir.1983) (no statute of limitations applies when Secretary of Labor brings an anti-retaliation suit under Occupational Safety and Health Act); *Marshall v. Intermountain Elec. Co.*, 614 F.2d 260, 263 (10th Cir.1980) (same); *Nabors v. NLRB*, 323 F.2d 686, 688–89 (5th Cir.1963) (no statute of limitations applies when National Labor Relations Board enforces the National Labor Relations Act), *cert. denied*, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964).

When the Commission sues to enforce the securities laws, it vindicates public rights and furthers the public interest. The public character of Commission action is reflected in the introduction to the 1934 Act: "[T]ransactions in securities ... are affected with a national public interest which makes it necessary to provide for regulation and control of such transactions." 15 U.S.C. § 78b. Congress entrusted the Commission with the vital mission of ensuring the honesty and fairness of the capital markets. "The entire purpose and thrust of a [Commission] enforcement action is to expeditiously safeguard the public interest by enjoining securities violations. The claims asserted in such an action stem from, and are colored by, the intense public interest in [Commission] enforcement of these laws." *SEC v. Asset Management Corp.*, 456 F.Supp. 998, 1000 (S.D.Ind.1978). Focusing on this public interest, a number of district courts have refused to hold the Commission to a statute of limitations. *See, e.g., SEC v. Keating*, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,906, at 93,751, 1992 WL 207918 (C.D.Cal. July 23, 1992); *SEC v. Willis*, 777 F.Supp. 1165, 1174 (S.D.N.Y.1991) (*Willis*); *SEC v. Glick*, [1980 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,535, at 97,794, 1980 WL 1414 (D.Nev. June 12, 1980) (*Glick*).

■ Disgorgement plays a central role in the enforcement of the securities laws. "The effective enforcement of the federal securities laws requires that the [Commission] be able to make violations unprofitable. The deterrent effect of [a Commission] enforcement action would be greatly undermined if securities law violators were not required to disgorge illicit profits." *Manor Nursing*, 458 F.2d at 1104. By deterring violations of the securities laws, disgorgement actions further the Commission's public policy mission of protecting investors and safeguarding the integrity of the markets. Although the Commission at times may use the disgorged proceeds to compensate injured victims, this does not detract from the public nature of Commission enforcement actions: "the touchstone remains the fact that public policies are served and the public interest is advanced

by the litigation." *Local 427*, 894 F.2d at 612.

Imposing a state or any other statute of limitations on Commission civil enforcement actions would also conflict with the underlying policies of the securities laws; this conclusion strongly negates any inference that Congress intended a limitations period to apply. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977) (*Occidental*). In *Occidental*, the Court refused to apply state limitations periods to employment discrimination suits brought by the EEOC pursuant to Title VII. The Court concluded that borrowing state statutes would frustrate federal policy and congressional intent for two reasons. First, federal law required the EEOC to investigate and attempt to resolve administratively claims of employment discrimination before bringing suit. *Id.* at 368, 97 S.Ct. at 2455. Second, the EEOC already faced a severe backlog of cases when Congress extended the coverage of Title VII and authorized the EEOC to bring civil enforcement actions in federal court. *Id.* at 369–71, 97 S.Ct. at 2456–57. These two factors indicated that Congress could not have intended state statutes of limitations, some as short as one year, to apply to EEOC actions. *Id.* at 370–71, 97 S.Ct. at 2456–57. The Court therefore concluded that no statute of limitations applied. *Id.* at 372, 97 S.Ct. at 2457.

■ The same result is appropriate in this case. As with the EEOC, the Commission must expend considerable time and energy investigating alleged violations of the securities laws. Unlike the typical case of employment discrimination, securities fraud may involve multiple parties and transactions of mind-boggling complexity. Market manipulation is notoriously hard to detect. Placing strict time limits on Commission enforcement actions therefore would quite plainly "frustrate or interfere with the implementation of national policies." *Id.* at 367, 97 S.Ct. at 2455. In addition, although the Commission is not obligated to try to negotiate a settlement as is the EEOC, as a practical matter, the

Commission often attempts settlement in order to avoid costly and time-consuming litigation. In this case, for example, the Commission settled with 12 of Rind's co-defendants. Finally, Rind correctly points out that the Commission could not have had a backlog of cases when the 1933 and 1934 Acts were enacted because these statutes created the Commission. However, Congress gave the Commission a broad mandate to regulate the securities market, and it is consistent with the structure of the statutes to assume that Congress did not include express statutes of limitations out of a fear that the fledgling agency would soon be swamped with cases. Therefore, *Occidental* supports the conclusion that no statute of limitations should apply to Commission civil enforcement actions.

■ We hasten to add that our holding here will not open the door to the prosecution of stale claims. A court can and should consider the remoteness of the defendant's past violations in deciding whether to grant the requested equitable relief. *See Willis*, 777 F.Supp. at 1174; *Glick*, [1980 Transfer Binder] Fed.Sec.L.Rep. at 97,794. Although no fixed period of limitations governs Commission actions, a court may exercise its discretion to limit the Commission's power to seek relief. *Cf. Occidental*, 432 U.S. at 373, 97 S.Ct. at 2458 (suggesting that federal courts have "discretionary power" to take EEOC delay in filing suit into account when fashioning relief).

### III

■ Rind also argues that 28 U.S.C. § 2415(b) bars the Commission's action in this case. Section 2415(b) provides, with some exceptions, that "every action for *money damages* brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues." (Emphasis added.)

Even assuming securities fraud fits within the definition of "tort" for purposes of section 2415(b), the statute by its terms

only covers suits for money damages. As we shall explain, disgorgement is a form of injunctive relief. Section 2415(b) is therefore inapplicable.

## IV

The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. Rind contends that when the Commission sues for disgorgement it is really after money damages and that he is therefore entitled to a trial by jury. Entitlement to a jury trial in federal court is a question of law reviewed de novo. *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989).

Two issues are to be addressed in determining whether the right of trial by jury attaches to a statutory claim. First, we must "compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). Second, we must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18, 107 S.Ct. at 1835. The second inquiry is more important. *Id.* at 421, 107 S.Ct. at 1837.

We agree with the Second Circuit that a defendant is not entitled to a jury trial where the Commission sues for disgorgement of illicit profits. *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95–96 (2d Cir.1978) (*Commonwealth*). There is no dispute that the right to a jury trial does not attach to purely injunctive actions brought by the Commission. *Bradford v. SEC*, 278 F.2d 566, 567 (9th Cir.1960). The same result should apply in a disgorgement action, for several reasons. First, we have already held that disgorgement of profits is one part of the Commission's power to obtain injunctive relief. *SEC v. Clark*, 915 F.2d 439, 453 (9th Cir.1990). Second, the Supreme Court has observed that actions for disgorgement of improper profits are equitable in nature. *See Chauffeurs,*

*Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570, 110 S.Ct. 1339, 1347, 108 L.Ed.2d 519 (1990). Third, the fact that disgorgement involves a claim for money does not detract from its equitable nature: in such an action, "the court is not awarding damages to which plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment." *Commonwealth*, 574 F.2d at 95. An action by the Commission "is decidedly more analogous to the traditional jurisdiction of equity to award restitution." *Id.* at 96. Rind does not have a right of trial by jury.

AFFIRMED.