**Lee KINDER, et al., Plaintiffs,**

**v.**

**COLEMAN & YATES COAL CO., et al., Defendants.**

**Civ. A. No. 95–167–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Sept. 2, 1997.

Lawrence L. Moise, III, Vinyard & Moise, Abingdon, VA, for plaintiff Lee Kinder.

John F. Corcoran, U.S. Attorney's Office, Roanke, VA, Ronald Gurka, U.S. Dept. of Labor, Office of Sol., Arlington, VA, James V. Blair, Caryl L. Casden, U.S. Dept. of Labor, Arlington, VA, for intervenor–plaintiff Stuart Glassman.

Joseph Wisler Bowman, Street, Street, Street, Scott & Bowman, Grundy, VA, Stanford Thomas Mullins, Grundy, VA, Mark E. Solomons, Michael Robert Goodstein, Arter & Hadden, Washington, DC, for defendants.

## OPINION

JONES, District Judge.

The defendants, a coal company and its insurer, have moved to dismiss this action to enforce an administrative penalty awarded against the company due to its late payment of black lung benefits. The defendants contend that enforcement is barred by the relevant limitations periods, and, alternatively, that the intervening plaintiff lacks standing. The plaintiff, a former employee, and the intervening plaintiff, a government official who administers black lung claims, contend either that no limitations period applies, or that the action is timely under the relevant limitations period to be borrowed from federal law or, alternatively, from state law. The plaintiff also asserts, under a separate enforcement provision, that his action is not barred by that provision's one year limitations period. I hold that the action is untimely under either enforcement provision and will grant the motion to dismiss on this basis.[1]

### *I. Factual Background.*

On July 2, 1975, the plaintiff, Lee Kinder, a former employee of Coleman & Yates Coal Company ("Coleman"),[2] filed a federal workers' compensation claim under the Black Lung Benefits Act ("BLBA"), 30 U.S.C.A. §§ 901–945 (West 1986 & Supp.1997). Following a formal hearing, a Department of Labor administrative law judge ("ALJ") issued a decision, dated December 9, 1986, requiring Coleman to begin paying monthly benefits and to pay retroactive benefits, covering the July 1975–January 1987 time period, in the amount of $74,653. This decision was filed with the Office of Workers' Compensation Programs District Director ("District Director") on December 17, 1986.

Although Coleman began paying monthly benefits in February, 1987, it refused to pay any retroactive benefits, pending its appeal to the Benefits Review Board. The Black Lung Disability Trust Fund ("Fund"),[3] paid

1. Having disposed of the case on this ground, I need not and do not address the defendants' contentions regarding the intervening plaintiff's standing.

2. Coleman's insurer, Old Republic Insurance Company, also is a defendant in this action.

3. Eight years after the initial passage of the BLBA, Congress enacted the Black Lung Benefits Revenue Act of 1977, Pub.L. 95–227, 92 Stat. 11 (1978). Pursuant to this act, Congress created a fund, financed by an excise tax on each ton of coal mined and sold after March 31, 1978, to pay benefits to workers in the event that no responsible coal operator existed or, as in this case, the responsible operator refused to pay. The government has the right to recoup expended funds from a delinquent coal operator by imposing a lien and by enforcing its lien in a district court. 30 U.S.C.A. § 934(b)(4)(A) (West 1986). Such an enforcement action is subject to a *six year limitations period.* 30 U.S.C.A. § 934(b)(4)(B) (West 1986).

Kinder $74,653, the amount of the retroactive benefits that Coleman refused to pay. On October 25, 1988, the Benefits Review Board vacated the ALJ's order and remanded the case. In response, Coleman discontinued its provision of monthly benefits in November, 1988. The ALJ issued a second decision, dated February 16, 1989, and filed with the District Director on March 2, 1989, ordering Coleman to recommence monthly benefits and to pay retroactive benefits in the amount of $4,347.30, for the period of November, 1988 through February, 1989.[4] Coleman resumed monthly payments to Kinder in June, 1989, but again refused to make any retroactive payments pending its appeal to the Benefits Review Board. These retroactive benefits were paid by the Fund in September, 1991.[5]

On July 30, 1991, the Benefits Review Board affirmed the ALJ's second benefits award and, subsequently, Coleman reimbursed the Fund for the retroactive benefits paid to Kinder, totaling $79,000.30. On March 17, 1992, the District Director,[6] sua sponte, issued a "supplemental award of benefits," requiring Coleman to pay Kinder $15,-800.06, representing a twenty percent penalty due to its failure to make timely payments of the retroactive benefits.

Kinder filed this action on October 6, 1995, seeking to enforce the March 17, 1992, supplemental award of benefits, pursuant to section 918(a) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C.A. § 918(a) (West 1986), a provision incorporated into the BLBA pursuant to 30 U.S.C.A. § 932(a) (West 1986). On March 4, 1996, the District Director moved to intervene as a plaintiff and sought to enforce the supplemental award of benefits under section 921(d) of the LHWCA, 33 U.S.C.A. § 921(d) (West 1986), another incorporated enforcement provision.[7] By order of March 7, 1996, this intervention was permitted.

The defendants now move for dismissal on the ground that the action is barred by the one year statute of limitations contained in section 918(a),[8] and, in the absence of an express limitations period in section 921(d), by Virginia's general or "catch-all" one year statute of limitations. Alternatively, the defendants contend that the District Director lacks standing to bring this action. The plaintiffs have raised numerous arguments in response to the defendants' assertions. Briefs and oral argument have been presented and the defendants' motions are ready for decision.

### *II. Black Lung Claims Procedure.*

Prior to addressing the merits of the defendants' motion, some discussion of the procedural framework for the adjudication and enforcement of black lung claims is necessary. The BLBA established a comprehensive scheme designed to compensate miners for medical problems and disabilities related to pneumoconiosis. 30 U.S.C.A. §§ 901–945 (West 1986 & Supp.1997). Claims under the BLBA are processed by the Secretary of Labor,[9] in accordance with the procedural provisions of the LHWCA, as incorporated

4. After both the December, 1986 and the March, 1989 orders, the Department of Labor notified Coleman that the awards, including their retroactive portions, were not stayed pending appeal to the Benefits Review Board and that a failure to promptly comply with the terms of the awards could result in additional liability.

5. Because Coleman recommenced payments in June, 1989, its "retroactive" obligations, paid by the Fund, included payments due through May, 1989.

6. At the time, Margaret Peterson was the District Director, the position now held by the intervening plaintiff, Stuart Glassman.

7. Kinder's complaint requests an order compelling Coleman to comply with the March, 1992 order along with costs, attorney's fees and interest, while the District Director seeks a judgment and order for the outstanding amount, along with an order granting other appropriate relief.

8. The District Director agrees with the defendants' view of the section 918(a) enforcement action, while Kinder argues, relying on a particular construction of the March, 1992 award, that his action is timely under section 918(a).

9. Kinder's claim arises under "Part C" of the BLBA which addresses claims filed after December 31, 1973. 30 U.S.C.A. §§ 931–945 (West 1986 & Supp.1997). Claims filed on or before December 31, 1973, are governed by "Part B" and are administered by the Social Security Administration, rather than the Department of Labor. 30 U.S.C.A. §§ 921–925 (West 1986 & Supp.1997).

into the BLBA. 30 U.S.C.A. § 932(a) (West 1986).

These provisions favor the prompt resolution of claims and enforcement of compensation awards. *Sea-Land Serv. Inc. v. Barry,* 41 F.3d 903, 907 (3d Cir.1994) (noting that purpose of the LHWCA is to place a "compensation award in the hands of the entitled claimant as soon as possible"). Once a claim arises and notice is provided, an employer must either pay or contest the claim within fourteen days. 33 U.S.C.A. § 914(a)-(d) (West 1986). If a claim is contested, upon the request of an interested party, a District Director [10] must order a hearing before an ALJ. 33 U.S.C.A. § 919(c) (West 1986). During this interim period, an employer is under no obligation to pay a disputed claim.[11] However, after an ALJ has made an award, payment must be made within thirty days of the award's "effective" date, regardless of whether the employer chooses to appeal the award.[12] 33 U.S.C.A. § 918(a) (West 1986). An award is effective once it is filed in a District Director's office. 33 U.S.C.A. § 921(a) (West 1986). An effective award becomes "final" after thirty days, if the employer fails to appeal, or after the employer has exhausted its appeals. *Id.*

The LHWCA contains separate provisions for the enforcement of effective and final awards in the event of an employer's default. Section 918(a) governs enforcement after a default on an effective award. An employer is in default, for the purposes of section 918(a), if payment has not occurred within thirty days of the award's effective date, the date of filing with the District Director. 33 U.S.C.A. § 918(a) (West 1986). Within one year of the default, an employee [13] may obtain, from the District Director, a "supplementary order" declaring the amount in default and may then file this order with a district court which will enter "judgment" for that amount. *Id.* A supplementary order issued under section 918(a) is not subject to administrative appeal, and review of the order is limited to the district court's assessment, prior to enforcement, of whether the award was issued "in accordance with law." [14] *Id.*

A "final" order is enforceable under section 921(d). Under this provision, any beneficiary or the District Director may apply to a district court for enforcement of a final order. 33 U.S.C.A. § 921(d) (West 1986). Section 921(d) provides that a district court "shall enforce obedience to the order by writ of injunction or by other proper process ... to enjoin ... compliance with the order." *Id.* Section 921(d) contains no express statute of limitations for such an enforcement action. *Cassell v. Taylor,* 243 F.2d 259, 261 (D.C.Cir. 1957).

The LHWCA also seeks to encourage prompt payments by penalizing employers who delay in meeting their obligations. Section 914(f) imposes an automatic penalty of twenty percent of an underlying compensation award in the event that an employer fails to pay the award within ten days of its

10. Although LHWCA provisions refer to this official as the "deputy commissioner," the Department of Labor has renamed this official the District Director. 20 C.F.R. § 725.101(a)(11) (1997).

11. Within 20 days of the hearing, the ALJ must either reject the claim or issue a compensation order designating the extent of the disability and the amount of the compensation. *Williams v. Jones,* 11 F.3d 247, 251 n. 2 (1st Cir.1993) (describing LHWCA claims procedure).

12. In limited circumstances, an employer may stay its obligation to pay an effective award if the order would result in "irreparable injury" to the employer. 33 U.S.C.A. § 921(c) (West 1986).

13. Section 918(a)'s language limits the right to seek a supplementary order to "the person to whom such compensation is payable." 33 U.S.C.A. § 918(a) (West 1986). Section 921(d), however, confers independent authority upon the District Director to initiate enforcement. 33 U.S.C.A. § 921(d) (West 1986) (beneficiary or District Director may enforce underlying final award).

14. Under section 918(a), prior to issuing a "supplementary order," the District Director is required to find that compensation was due under an award and that a default occurred and must calculate the amount of the default. *In re Compensation Under the Longshore and Harbor Workers' Compensation Act,* 889 F.2d 626, 629 (5th Cir.1989). A district court's "in accordance with law" review ensures that the District Director made these findings. *Id.* Section 918(a) also provides that an employer may seek judicial review of a district court's entry of judgment "as in civil suits for damages at common law." 33 U.S.C.A. § 918(a) (West 1986).

effective date. 33 U.S.C.A. § 914(f) (West 1986); *Lauzon v. Strachan Shipping Co.,* 782 F.2d 1217, 1222 (5th Cir.1985). Section 914(f) does not specifically provide for the issuance or enforcement of a penalty award. 33 U.S.C.A. § 914(f) (West 1986); *Providence Washington Ins. Co. v. Director, Office of Workers' Compensation Programs,* 765 F.2d 1381, 1385 (9th Cir.1985).

Section 914(f) penalty assessments have been interpreted as more logically enforceable through the issuance of a supplementary order under section 918(a), rather than pursuant to section 921(d). *Providence Washington Ins. Co.,* 765 F.2d at 1386. Courts, however, have not precluded the enforcement of a section 914(f) penalty under section 921(d), *Reid v. Universal Maritime Serv. Corp.,* 41 F.3d 200, 202 (4th Cir.1994), but have noted that section 918(a) enforcement "far better meets the Congressional purpose of a quick and streamlined mechanism for the collection of compensation under the LHWCA." *Providence Washington Ins. Co.,* 765 F.2d at 1385.

*III. Section 918(a) Claim.*

Kinder attempts to resurrect his section 918(a) action by relying on a unique construction of the procedural provisions of the LHWCA. Under Kinder's reasoning, his compensation awards were not "due and payable" until after the Benefits Review Board decision of July 30, 1991. By extension, the District Director's March, 1992 decision, allegedly initiating his enforcement action, occurred within one year of Coleman's default on these awards, rendering his suit timely.

I disagree with this reasoning. Kinder has misconstrued the procedural framework of the LHWCA. A section 914(f) penalty automatically arises if an employer fails to pay an award within ten days of its due or effective date. An award is effective upon its filing in the District Director's office. Here, the section 914(f) penalties would have arisen, respectively, on December 27, 1986, and on March 12, 1989. Section 918(a) requires Kinder to have applied for a supplementary order within one year of Coleman's default on these obligations. Accordingly, his section 918(a) enforcement action is untimely.

*IV. Sovereign Exception to Limitations Periods.*

The defendants have moved to dismiss the plaintiffs' section 921(d) enforcement action on the ground that it is barred by Virginia's general one year statute of limitations which should be applied in the absence of an express limitations period in the federal statute. The plaintiffs contend that no limitations period applies because the District Director's suit constitutes a sovereign action undertaken for a public purpose. In support of this argument, the plaintiffs characterize the action as part of a federal policy aimed at ensuring prompt compliance with the BLBA and of easing the burden on the Fund. In reply, the defendants assert that the government's nominal involvement in a claim which advances a private right does not render it a sovereign action. The defendants further argue that the claim only benefits Kinder and will not result in the recoupment of any public funds.

I hold that the enforcement of Kinder's penalty award is not a sovereign action for a public purpose. Rather, in this instance, the government, as the administrator of the black lung program, is facilitating the resolution of an essentially private dispute, and is not entitled to a sovereign exemption from all limitations periods.

In the absence of an explicit limitations period in a federal statute, courts presume that Congress intended by its silence to borrow a limitations period from the most analogous state law cause of action. *Reed v. United Transp. Union,* 488 U.S. 319, 323–24, 109 S.Ct. 621, 624–25, 102 L.Ed.2d 665 (1989). This presumption, however, is subject to several exceptions. *Id.* at 324, 109 S.Ct. at 625. If the case involves a suit by the United States, in its sovereign capacity, to vindicate a public right or policy, no statute of limitations will apply, absent a clear showing of a legislative intent to the contrary. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938); *see United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940). This public policy exemption is based on the view "that the public interest should not be prejudiced by

the negligence of public officers, to whose care they are confided." *United States v. Knight,* 39 U.S. 301, 315, 14 Pet. 301, 10 L.Ed. 465 (1840).

A necessary inquiry in determining if this exemption applies is examining whether the government is proceeding in its sovereign capacity. *See United States v. Beebe,* 127 U.S. 338, 344, 8 S.Ct. 1083, 1086–87, 32 L.Ed. 121 (1888); *Dole v. Local 427, IUE,* 894 F.2d 607, 611 (3d Cir.1990) ("The critical issue ... is whether the [g]overnment was acting in its [g]overnmental capacity and asserting its claim in that right or whether the [g]overnment was acting in ... nothing more than a dispute between two [private] parties ...." (internal citations and quotations omitted)). Courts should assess if the government's role is that of a "mere conduit for the enforcement of private rights which could have been enforced by the private parties themselves." *Marshall v. Intermountain Elec. Co.,* 614 F.2d 260, 262 n. 3 (10th Cir.1980).

A sovereign action, however, need not exclusively benefit the public and, in fact, may also provide benefits to specific individuals. *Dole,* 894 F.2d at 612; *Marshall,* 614 F.2d at 262–63. If the statute at issue only authorizes enforcement by a government agency, the resulting suit is more likely to be construed as a sovereign action. *Donovan v. Square D Co.,* 709 F.2d 335, 338–39 (5th Cir.1983). In conducting their inquiry into the nature of an action, courts should also examine the legislative history of the federal statute. *Dole,* 894 F.2d at 612–13.

*Dole,* 894 F.2d 607, and *SEC v. Rind,* 991 F.2d 1486 (9th Cir.1993), both involved agency enforcement actions, under statutory provisions failing to specify a limitations period, which benefitted individuals. In *Rind,* the Securities and Exchange Commission ("SEC") sought to enjoin the defendant from future securities law violations and to disgorge his unlawful gains. *Rind,* 991 F.2d at 1488.

The *Rind* court exempted the agency from all limitations periods because SEC enforcement actions vindicate public interests, namely the prevention of securities fraud. *Id.* at 1491. Although the disgorged funds might compensate specific individuals, this remedy ultimately furthered the policy of protecting the investing public as a whole. *Id.* The court also rejected the applicability of the limitations period utilized for private claims, finding that it failed to reflect the different issues at stake in an SEC action. *Id.* at 1490. Unlike private claims for "entirely private ends," an SEC action was "part of [the SEC's] statutory mandate to enforce federal securities laws." *Id.* ("[P]rivate damages actions focus narrowly on how much the individual lost" while SEC actions "promote economic and social policies independent of the claims of individual investors.").

The Third Circuit applied similar reasoning in its analysis of whether a governmental enforcement action under the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.A. §§ 414 & 440 (West 1985), should be subject to any limitations periods. *Dole,* 894 F.2d at 607. In *Dole,* the Secretary of Labor sought to enjoin a local union from prohibiting one of its members from reviewing collective bargaining agreements between itself and other employers. *Id.* at 608.

In finding that no limitations periods applied, the court characterized the action as a "classic example" of the assertion of a "public right," and emphasized that the statute's legislative history reflected a concern with undemocratic union practices and their adverse impact on the public. *Id.* at 613. The court also noted its belief that Congress had "conceived of [g]overnment suits as an integral part" of LMRDA's enforcement mechanisms. *Id.* at 609. The court distinguished LMRDA actions from suits in which the government had no real interest. *Id.* at 612. Instead, the court compared the public policy behind such suits, preserving union democracy, to EEOC enforcement actions, which sought to deter racial discrimination, concluding that both types of litigation served the broader public interest. *Id.* at 616.

Following the reasoning applied in these decisions, the District Director's section 921(d) action, on behalf of Kinder, is not a sovereign action. Unlike the enforcement actions at issue in *Rind* and *Dole,* the government's enforcement of a penalty awarded to an individual does not serve a broad public policy, comparable to eliminating racial dis-

crimination, preserving union democracy, or preventing fraud against the investing public. The enforcement of a black lung penalty has a specific individual beneficiary, provides the equivalent of money damages for an employment-related injury, and, in this instance, will not result in the return of funds to the public fisc.

Arguably, particularly in the case of a penalty award, the enforcement of compensation and supplementary orders has effects beyond the individual claimant, deterring other employers from not promptly satisfying their black lung obligations. However, such effects do not alter the private nature of a section 921(d) enforcement action. This broader deterrence policy is intended to benefit not the public as a whole but a distinct and particular class of private claimants seeking compensation in what remains a private dispute. In *Rind* and *Dole,* the courts focused on the existence of public interests, the equivalent of which are not present here.

Nor am I convinced that Congress envisioned that the government would play an "integral role" in the enforcement of black lung benefits awards. Under the claims procedure, the government's role is more analogous to an administrator of claims between private parties providing a forum, rules, and procedures for resolving their disputes. The BLBA does not exclusively authorize the government to enforce black lung awards. In fact, the claimant must initially file the claim, must present adequate proof in an administrative adjudication, and, under section 918(a), must initiate enforcement. This is not to indicate that the BLBA and the LHWCA did not contemplate an active role for the administering agencies, but merely that this role is more akin to a "mere conduit" for private disputes, than to an enforcer of federal policy.

The legislative history of the BLBA does not conflict with my conclusion that this action is properly viewed as a private claim.[15] The legislative intent behind the BLBA reflected a strong concern with the impact of pneumoconiosis on coal miners and their families, a problem which states had failed to address through their own workers' compensation programs. *See Helen Mining Co. v. Director, Office of Workers' Compensation Programs,* 924 F.2d 1269, 1270–71 (3d Cir. 1991) (discussing legislative purpose of the BLBA).

A central goal of the resulting black lung program was to ensure that miners who were entitled to benefits received them as expeditiously as possible. *Nealon v. California Stevedore & Ballast Co.,* 996 F.2d 966, 970 (9th Cir.1993) ("The purpose of the Longshore Act, like the purpose of the Black Lung Act, is to deliver benefits to injured workers."); *Tidelands,* 719 F.2d at 129 ("[A] quick and inexpensive mechanism for the prompt enforcement of unpaid compensation awards" is "a theme central to the spirit, intent, and purposes of the LHWCA."). This legislative purpose, however, does not reflect a broader concern with the effects of pneumoconiosis or of the states' failure to address this occupational disease on the public as a whole. Instead, Congress sought to intervene in private disputes between an employee and an employer.[16]

Nor am I persuaded by the plaintiffs' attempt to graft onto Kinder's claim the public policy of ensuring the financial stability of the Fund. The policy behind section 921(d), enforcing an administrative order for an individual's benefit, and the policy behind those provisions which establish the Fund and safeguard its solvency, are separate and distinct. In fact, a closer examination of the legislative history of these provisions reinforces the con-

15. Scant legislative history exists regarding the BLBA's adoption of the LHWCA's procedural framework. These procedures were not included in early versions of the legislation and were inserted by the conference committee. *See* H.R.Rep. No. 761 (1969).

16. Divergent views exist regarding the exact purpose of the black lung benefits program. *See* Allen R. Prunty & Mark E. Solomons, *The Federal Black Lung Program: Its Evolution and Current Issues,* 91 W. Va. L.Rev. 665 (1989). It is viewed alternatively as a traditional workers' compensation program, a federal social program, and a means of repaying a societal debt to a particular group of workers. *Id.* However, the stated purpose of the BLBA is "to provide fair, industry-funded workers' compensation benefits for total disability due to coal workers' pneumoconiosis." *Id.* at 666. Moreover, none of these perspectives impact my conclusion that the BLBA is intended to benefit a particular class of individuals, rather than the public as a whole.

clusion that the section 921(d) action constitutes a private claim.

As one court has noted, the statutory background of the black lung program "could hardly be more complicated." *Helen Mining Co.,* 924 F.2d at 1270. However, it is clear that Congress intended for states or individual coal operators to bear the financial burden of claims by miners. Under the original act, Part B claims were administered by the Social Security Administration and were paid by the federal government. *See* Federal Coal Mine Health and Safety Act, Pub.L. 91–173, 83 Stat. 792–798 (1969). Part C claims were administered by the Department of Labor, but paid pursuant to state workers' compensation programs approved by the Department of Labor, or by responsible coal operators. *Id.* Because no state programs were approved, identifiable mine operators were charged with all Part C claims. *Helen Mining Co.,* 924 F.2d at 1271. However, in the early years of the black lung program, the federal government assumed financial responsibility for paying Part C claims if the responsible operator refused or no longer existed. *See Director, Office of Workers' Compensation Programs v. Bivens,* 757 F.2d 781, 783 (6th Cir.1985).

In enacting the Black Lung Benefits Revenue Act of 1977, Congress sought to shift the financial responsibility for the black lung program from the government back to responsible individual coal operators, as it had originally intended, through the establishment of an industry-financed fund. 123 Cong. Rec. 24,248 (1977) (Statement of Sen. Randolph); *see* Senate Comm. On Human Resources, Black Lung Benefits Reform Act of 1977, S.Rep. No. 209, (1977), *reprinted in* House Comm. on Educ. and Labor, 96th Cong., Black Lung Benefits Reform Act and Black Lung Benefits Revenue Act of 1977, at 612 (Comm. Print 1979).

This statutory history supports a view of black lung claims as private, rather than public, obligations. Section 934 of the BLBA, which authorizes government suits to recover expended public funds, reflects a public interest in ensuring that the government is not, in the long run, the source of compensation for these claims. 30 U.S.C.A. § 934(b)(4) (West 1986). On this basis, I hold that the plaintiffs are not entitled to a sovereign exemption from all limitations periods.

*V. Occidental Life Exception.*

The plaintiffs also invoke a second exception to the presumption in favor of state limitations periods. In *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 369, 97 S.Ct. 2447, 2456, 53 L.Ed.2d 402 (1977), the Supreme Court exempted the EEOC from any limitations periods because the application of a limitations period "would be inconsistent with the underlying policies of the federal statute," Title VII. *See Rind,* 991 F.2d at 1492 (noting that imposing time limits on SEC enforcement actions would undermine federal policy because "securities fraud may involve multiple parties and transactions of mind boggling complexity").

This exception is also inapplicable to the plaintiffs' section 921(d) action. The federal policy behind the BLBA, and, more particularly, its enforcement procedures, is to provide a claimant with prompt benefits and to not subject the receipt of those benefits to delay pending appeal. *Tidelands,* 719 F.2d at 129. Applying a limitations period to section 921(d) will not frustrate this purpose. Pursuant to section 918(a), a claimant may enforce a compensation award thirty days after its effective date. This provision assures a claimant, with urgent financial needs, of an immediate right to enforce a compensation award. Because section 921(d) applies only after an award is final, the imposition of a limitations period on section 921(d) would have no adverse impact on the provision of immediate relief to a claimant.

*VI. Equitable Action.*

The plaintiffs also contend that no statute of limitations applies because their action is a suit in equity. Their argument is premised on the language of section 921(d) which authorizes a court to "enforce obedience ... by writ of injunction or by other proper process ... to enjoin compliance with the order." 33 U.S.C.A. § 921(d) (West 1986). The defendants argue that the "other proper process" language refers to typical remedies at law and, that because the plaintiffs request monetary relief, their section 921(d) suit should be construed as a legal action. Moreover, relying on precedent examining the right to a jury trial, the defen-

dants contend that a mere request for injunctive relief, which is incidental to a request for monetary relief, does not make an action equitable.

Under the facts, the plaintiffs' suit is concurrently at law and in equity, and, as such, is not exempt from limitations periods. Traditionally, "statutes of limitation are not controlling measures of equitable relief." *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946). Although no statute of limitations is applicable to an equitable action, the doctrine of laches may bar an equitable remedy. *Russell v. Todd,* 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940). Courts, however, have treated actions involving concurrent legal and equitable remedies differently, and, in such instances, a statute of limitations could be applied to bar both causes of action. *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1340–41, 91 L.Ed. 1602 (1947).

The exact nature of the remedies available under section 921(d) is unclear. However, existing precedent suggests that an action to enforce a past due penalty should not be considered purely equitable. In *Cassell v. Taylor,* 243 F.2d 259–60 (D.C.Cir.1957), a former employee sought to enforce a compensation order, pursuant to section 921, sixteen years after the initial award against his employer. The plaintiff requested an injunction and "such other and further relief as the nature of the case may require," and ultimately received a money judgement from the district court. *Id.* at 261.

On appeal, the employer argued that section 921 did not authorize a money judgment remedy and that the action was barred by the District of Columbia's general statute of limitations. *Id.* at 260. Although questioning if a money judgment was an available remedy under section 921, the D.C. Circuit decided the case on the ground that, as a concurrent equitable and legal action, the claim was barred by the local, general statute of limitations. *Id.* at 261. In reaching this conclusion, the court relied on the fact that the employee "attempted to enforce his legal right" and "received a judgment for the unpaid balance of the award." *Cassell,* 243 F.2d at 261; *see Williams v. Jones,* 11 F.3d 247, 253 n. 8 (1st Cir.1993) (noting but not addressing a magistrate's finding that section 921(d) permitted only the prospective enforcement of a compensation order, not the recovery of past due amounts).

The plaintiffs' claim is not sufficiently distinguishable from the enforcement action at issue in *Cassell.* In essence, the plaintiffs seek a money judgment, along with any incidental injunctive relief, to recover a past due penalty award.[17] Since the plaintiffs' claim cannot be characterized as being exclusively in equity, I hold that their section 921(d) enforcement action is subject to a statute of limitations.

This conclusion is supported by precedent assessing the right to a jury trial. In determining if a suit is equitable or legal for Seventh Amendment purposes, courts conduct a two-pronged inquiry by examining first, the nature of the issues involved and second, the nature of the remedy sought. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, 97, 112 S.Ct. 494, 497–98, 116 L.Ed.2d 419 (1991). Of these two inquiries, the nature of the remedy is more important. *Id.* Here, the remedy sought favors construing the suit as a legal action.[18]

17. Unlike *Cassell,* one of the plaintiffs here has specifically characterized the remedy sought as a money judgment.

18. In *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the Supreme Court held that a LHWCA adjudication was not subject to the Seventh Amendment and rested its holding on the fact that Congress enacted the LHWCA pursuant to its admiralty jurisdiction. *Id.* at 45, 52 S.Ct. at 290 (1932). The Court characterized a LHWCA action as "one of private right ... the liability of one individual to another...." *Crowell,* 285 at 49, 52 S.Ct. at 291–92; *see Kalaris v. Donovan,* 697 F.2d 376, 386 (D.C.Cir.1983) ("there can be no doubt that adjudication of workers' compensation claims involve 'private rights.'"). Administrative adjudications have also been exempted from the Seventh Amendment because they were "unknown" to common law and because a jury trial would be incompatible with their purpose. *See Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). This analysis has not necessarily extended beyond the adjudication of public rights or private rights under statutes enacted pursuant to Congress' admiralty jurisdiction. *See Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977); *Sea–Land Serv. Inc. v. Director, Office of Workers' Compensation Programs,* 540 F.2d 629 (3d Cir.1976); *but see Gran-*

Although the Supreme Court has not held that monetary awards necessarily constitute legal relief, such awards were "the traditional form of relief offered in courts of law." *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974) (internal citations and quotations omitted). A monetary award may be considered equitable if it is restitutionary, as in an action to disgorge improper profits, or if it is "incidental to or intertwined with injunctive relief." *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987). "Remedies intended to punish culpable individuals" are considered legal remedies. *Id.* In this instance, the plaintiffs seek a money judgment penalizing Coleman for delaying its payment of compensation. Such relief is neither restitutionary nor could any injunctive relief accompanying the resulting monetary award be characterized as anything more than incidental.

*VII. Borrowed Federal Limitations Period.*

The plaintiffs next contend that the application of a state limitations period would frustrate the federal policies underlying the BLBA and adversely affect its uniform application.[19] According to the plaintiffs, these interests justify deviating from the presumption in favor of borrowing a state statute of limitations and instead adopting a limitations period from an analogous federal cause of action. The plaintiffs further contend that the closest federal analog is a section 934(b)(4)(B) action to enforce the government's black lung recoupment lien, which is subject to a six year statute of limitations. Because the application of a state statute of limitations poses no threat to the federal policies addressed by the BLBA, I find no basis for departing from the presumption in favor of a state limitations period. Although it is settled practice to borrow a limitations period from an analogous state cause of action, *North Star Steel Co. v. United Steelworkers,* 515 U.S. 29, 33, 115 S.Ct. 1927, 1930, 132 L.Ed.2d 27 (1995), if the state limitations period would be "at odds with the purpose or operation of federal substantive law," a court should assess whether an analogous federal cause of action provides a more appropriate limitations period. *DelCostello v. Teamsters,* 462 U.S. 151, 161–62, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). Reference to a federal limitations period, however, remains the exception and should occur only if "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking...." *Id.* at 172, 103 S.Ct. at 2294–95.

As I have discussed earlier, the federal policy behind the BLBA is promptly furnishing benefits to a claimant. The application of a state limitations period, including a one year statute of limitations, to a section 921 enforcement action would not frustrate this objective, given that the prompt enforcement of an award does not require an open-ended or extended limitations period.[20]

*VIII. Borrowed State Statute of Limitations.*

Finally, the plaintiffs assert that their section 921(d) action is governed by Virgi-

*financiera, S.A. v. Nordberg,* 492 U.S. 33, 34, 109 S.Ct. 2782, 2785–86, 106 L.Ed.2d 26 (1989) (noting that public rights may include private rights "closely intertwined" with a federal regulatory program). As Kinder's claim involves the adjudication of a private claim, this precedent weighs against concluding that the suit is a purely equitable action.

19. I will not address the plaintiffs' uniform application argument because they have not particularized the alleged adverse impact which would occur. Although uniformity may be a basis for not applying a state limitations period, the plaintiffs merely restate their arguments regarding upholding the policy behind the BLBA.

20. Arguably, an extended limitations period might detract from a policy favoring prompt payments by causing employees to delay enforcing awards and employers to misinterpret such delays as an unwillingness to pursue enforcement rights. Section 918(a) allows a claimant to enforce an award 30 days after its effective date, while under section 921(d) a claimant may enforce an award after an employer has exhausted its appeals. Taken together, these provisions allow a claimant to quickly receive benefits while preserving an employer's right of appeal. A lengthy statute of limitations is not essential to achieving these objectives.

nia's twenty year statute of limitations for the enforcement of judgments, Va.Code Ann. § 8.01–250.1 (Michie 1992). In support of this argument, Kinder asserts that actions to enforce state worker compensation awards are subject to this limitation period. In reply, the defendants argue that a section 921(d) claim differs from a state enforcement action and that Virginia's "catch-all" or general statute of limitations, Va.Code Ann. § 8.01–248 (Michie Supp.1997), should be borrowed.[21]

Section 8.01–248, rather than section 8.01–250.1, provides the appropriate statute of limitations. In order to select a state limitations period, a court must characterize the essence of the federal action. *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985). If more than one potentially analogous state cause of action exists, a court should choose the cause of action governed by the time period most appropriate to the enforcement of the federal scheme. *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 706–07, 86 S.Ct. 1107, 1113–14, 16 L.Ed.2d 192 (1966). Courts should locate actions involving similar behavior, harms and remedies and that reflect the same combination of interests. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 149–52, 107 S.Ct. 2759, 2763–65, 97 L.Ed.2d 121 (1987).

I am not persuaded that a section 921 action is analogous to the enforcement of a state compensation award under the Virginia Code, Va.Code Ann. § 65.2–710 (Michie 1991). Pursuant to this provision, a state compensation order may be enforced as an "order[ ] ... of a circuit court...." *Id.* Such orders are considered equivalent to judicial judgments, *see Dillard v. Industrial Comm'n,* 416 U.S. 783, 94 S.Ct. 2028, 40 L.Ed.2d 540 (1974), and thus subject to Virginia's twenty year limitations period for enforcing such judgments. The judiciary's role in enforcing these orders is narrow, and enforcement is a "purely ministerial act ... available with a minimum of delay or procedural difficulty." *Id.* at 786–87, 94 S.Ct. at 2031.

Although there are similarities[22] between the enforcement of state and BLBA compensation orders, a section 921 enforcement suit is not equivalent to an action to enforce a judgment. Moreover, such a construction would be inconsistent with the enforcement mechanism established by Congress.[23]

Section 918(a), not section 921(d), is specifically designed to furnish a claimant with a money judgment. Under this provision, a claimant may obtain a default order from the District Director and enforce the order by having a district court enter a money judgment. It is unlikely that Congress sought to allow a claimant to also obtain and enforce a money judgment pursuant to section 921. Section 921 does not expressly authorize either the entry or enforcement of a judgment. *Cassell,* 243 F.2d at 261 (expressing skepticism that a money judgment is among section 921's remedies). To interpret section 921 as an action to enforce a money judgment would appear to contradict the express provisions of the BLBA.

21. In the case of the plaintiffs' claim, which accrued prior to July 1, 1995, a one year statute of limitations would apply, while section 921 actions accruing after this date would be subject to a two year limitations period, because of a change in Virginia law. *See* Va.Code Ann. § 8.01–248 (Michie Supp.1997).

22. Differences also exist. Arguably, Virginia's Workers' Compensation Commission is vested with more significant enforcement authority than the Department of Labor. The Commission is considered a quasi-judicial body and, as part of its enforcement powers, has the authority to hold disobedient parties in contempt. *Hudock v. Industrial Comm'n,* 1 Va.App. 474, 340 S.E.2d 168, 172 (1986). Under Section 921(d), such contempt powers are granted to the district courts.

23. The defendants argue that a district court's review of a compensation or supplementary order pursuant to section 921(d) extends beyond the "ministerial" function that a state court performs in enforcing a state compensation order. However, I do not find the differences or similarities in the scope of judicial review to be conclusive and do not base my holding on this ground. A district court's section 921(d) review involves ensuring that no procedural defects exist, rather than performing a substantive review of the order. *Marshall v. Barnes & Tucker Co.,* 432 F.Supp. 935, 939 (W.D.Pa.1977). However, an employer may raise issues relating to the amount in default, whether new evidence of procedural deficiencies exists and if employee behavior weighs in favor of exercising judicial restraint. *Williams,* 11 F.3d at 253.

Arguably, if a claimant exercised his or her section 918(a) right to obtain a money judgment and subsequently sought to again enforce the award under section 921(d), the action might be analogous to the enforcement of a judgment. However, in this instance, Kinder never obtained a judgment pursuant to section 918(a).

Having rejected the appropriateness of a suit to enforce a judgment as an analogous cause of action, I must address the defendants' contention that section 8.01–248 provides the proper limitations period. Because of the existence of several potentially analogous causes of action, rather than one direct analog, I must select the cause of action and limitations period most appropriate to the federal scheme involved. *UAW,* 383 U.S. at 706–07, 86 S.Ct. at 1113–14.

The Fourth Circuit has upheld the application of Virginia's general limitations period to claims arising under federal statutes which fail to contain an express limitations period. *Schimmel v. Spillane,* 819 F.2d 477 (4th Cir. 1987). In *Schimmel,* despite determining that an analogous state cause of action existed, the court held that its shorter statute of limitations frustrated the purpose of the federal statute and affirmed the district court's adoption of section 8.01–248. *Id.* at 481–83. In reaching this conclusion, the court focused on whether the general limitations period satisfied the objectives of the federal legislation. *Id.* at 482–83 (finding section 8.01–248 applicable because it properly balanced the needs for a speedy resolution and for a fair opportunity for review).

Here, Virginia's general limitations period adequately safeguards the interests at stake under the BLBA. The BLBA was designed to allow a claimant to promptly receive benefits by imposing penalties on delinquent employers and by providing claimants with immediate enforcement rights. This scheme does not require subjecting employers to an extended limitations period, particularly in the case of a claimant who has failed to exercise his right to immediately obtain a money judgment. Moreover, even under these circumstances, an employee who effectively waives his section 918(a) rights would still have two years after an award becomes final to seek enforcement pursuant to section 921(d).[24]

This conclusion is supported by *Cassell,* the only reported case addressing the appropriate limitations period for a section 921 action. In *Cassell,* 243 F.2d at 261 n. 3, the D.C. Circuit chose to apply the District of Columbia's general statute of limitations, finding it "sufficiently broad to include enforcement actions of federally created rights." On this basis, I hold that the plaintiffs' claim is barred by the statute of limitations.

Accordingly, this action must be dismissed. An appropriate final judgment will issue.

**FINAL JUDGMENT**

For the reasons set forth in the opinion accompanying this final judgment, it is **ORDERED** and **ADJUDGED** that the defendants' motion to dismiss is granted and this action is dismissed.

24. Additionally, the imposition of a two year limitations period would not prevent a claimant from prospectively enforcing a compensation order under section 921(d) after the two year period had expired. Such a statutory construction is probably more consistent with the intent of the drafters of the LHWCA. It is likely that the drafters had in mind the prospective enforcement of periodic payments, rather than large lump sum payments like Kinder's.